IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| _____ ) | |
| NOVEL DRUG SOLUTIONS, LLC, and EYE ) CARE NORTHWEST, PA, ) ) | |
| Plaintiffs, ) ) | C.A. No. 18-539-MN |
| v. ) ) | **JURY TRIAL DEMANDED** |
| HARROW HEALTH, INC., ) ) | **REDACTED - PUBLIC VERSION** |
| Defendant. ) _____ ) ) | |
| HARROW HEALTH, INC., ) ) | |
| Defendant/Counterclaim ) Plaintiff, ) ) | |
| v. ) ) | |
| NOVEL DRUG SOLUTIONS, LLC and EYE ) CARE NORTHWEST, PA, ) ) | |
| Plaintiffs/Counterclaim ) Defendants ) ) | |
| and ) ) | |
| DR. JEFFREY LIEGNER AND J. SCOTT ) KAROLCHYK, ) ) | |
| Counterclaim ) Defendants. ) _____ ) | |

**THIRD AMENDED/SUPPLEMENTAL COMPLAINT**

Plaintiffs, Novel Drug Solutions, LLC and Eye Care Northwest, PA (collectively,

"Plaintiffs"), by way of Third Amended/Supplemental Complaint against Defendant, Harrow

Health, Inc. ("Harrow Health" or "Defendant"), claim as follows:

## NATURE OF THE ACTION

This is an action: (1) for a judicial declaration that a certain Asset Purchase Agreement is terminated pursuant to its terms, and Defendant is required to return the technology and assets purchased; and (2) for damages arising out of Defendant's unauthorized use of the technology and assets post-termination.

## PARTIES

1.     Plaintiff, Novel Drug Solutions, LLC ("NDS"), is a New Jersey limited liability company with a principal place of business at 39 Woodlawn Terrace, Lake Hopatcong, New Jersey 07849.

2.     Plaintiff, Eye Care Northwest, PA ("ECNW"), is a New Jersey professional association with a principal place of business at 1 Wilson Drive, Suite 1A, Sparta, New Jersey 07871.

3.     Defendant, Harrow Health, Inc. is a Delaware corporation with a principal place of business at 12626 High Bluff Drive, Suite 150, San Diego, California 92130.  Defendant was formerly known as Imprimis Pharmaceuticals, Inc.

## JURISDICTION

4.     This court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000 of the value of the object of the litigation, *i.e.*, an Asset Purchase Agreement.

5.     This court has personal jurisdiction over Defendant because it regularly conducts business in the State of Delaware and has purposefully availed itself of the laws of the State of Delaware.  Additionally, pursuant to the terms of the Asset Purchase Agreement entered between

the parties, Defendant has consented to exclusive jurisdiction of any federal court located in the State of Delaware.

## VENUE

6.     Venue is proper in this court, pursuant to the terms of the Asset Purchase Agreement entered between the parties in which Defendant consented to exclusive venue of any federal court located in the State of Delaware.

## FACTUAL ALLEGATIONS

### Background

7.     Plaintiffs invented a proprietary process to formulate compounded eye medications generally known under the subsequent trademark DropLess (referred herein as "DropLess").

8.     DropLess is a combination of certain drugs, including commonly used topical and injectable antibiotics and anti-inflammatory medications, *i.e.*, TriMoxi and other combined drugs, stabilized in a properly formulated solution with the Plaintiffs' intellectual property known as "poloxamer."

9.     DropLess is an injectable eye medication, which can be converted to a topical eye drop medication upon subtle variation of the concentration of poloxamer in the solution.

10.     On or around August 5, 2013, Plaintiffs filed a provisional patent application for this certain combination of drugs in a stabilized formulation using Plaintiffs' unique stabilizer known as poloxamer (United States Serial No.: 61/958,170).

11.     Within the patent submission, both injectable and topical formulations of the combination were proposed and defined.

### Asset Purchase Agreement

12.     Pursuant to an Asset Purchase Agreement, dated August 8, 2013, drafted by Defendant, Plaintiffs sold the poloxamer technology related to DropLess and assigned its patent

3

rights in this poloxamer technology to Defendant in exchange for consideration, including but not limited to the commercialization of DropLess and related products to be developed and the payment of royalties associated with the invention.  Attached hereto as *Exhibit "A"* is a true and accurate copy of the Asset Purchase Agreement.

13.     In particular, Defendant agreed to pay within thirty (30) days to Plaintiffs three (3) payments of ███████ each upon certain benchmark, as well as a quarterly, royalty payment of ████ of Defendant's net receipts from sales of any product developed from the invention.

14.     The term "Product" in the Asset Purchase Agreement is defined as:

> [A]*ny product, in any form or formulation*, *of an injectable ophthalmological pharmaceutical composition*, the composition comprising at least one therapeutically effective quantity of an anti-bacterial agent, at least one therapeutically effective quantity of an anti-inflammatory agent, at least one pharmaceutically acceptable excipient and at least one pharmaceutically acceptable carrier appropriate for intraocular or intravitreal injection, in each case for use in the prevention or treatment of any ophthalmic disease, state or condition in humans, which if made, used, offered for sale, sold or imported absent rights under the Assigned Patent Rights would infringe a valid claim of an issued patent within the Assigned Patent Rights.  [*Emphasis* added]

15.     The Asset Purchase Agreements requires Defendant to use "commercially reasonable efforts" to develop and commercialize a Product in major markets.  Specifically, Section 6.1 of the Asset Purchase Agreement, titled "Imprimis Diligence" reads:

> 6.1.1   [Harrow Health] shall use commercially reasonable efforts (whether alone or with or through its Licensees and its or their respective Affiliates) to research, develop and commercialize a Product in major markets.
>
> 6.1.2   [Harrow Health] shall control, at its sole expense, the preparation, filing, prosecution, maintenance and enforcement of the Assigned Patent Rights consistent with prudent business practices, and shall consider in good faith the interests of the Sellers.

16.     The Asset Purchase Agreement also contains a termination provision ("Termination Provision"), which allows Plaintiffs to receive return of the assets sold in the event

that certain benchmarks are not met.  Specifically, Section 8.2 of the Asset Purchase Agreement,

titled "Termination" reads:

> 8.2.2   If [Harrow Health], its Licensee or their respective Affiliates fails to file an Investigational New Drug Application in the United States for a Product before the fifth anniversary of the Effective Date, then (unless the parties otherwise mutually agree in writing) the Sellers shall jointly have the right, at their option and as their sole remedy, to terminate the Agreement.

> 8.2.3   In the event of termination of this Agreement in accordance with this Section 8.2, [Harrow Health] shall re-assign to Sellers the Technology and the other Assets.[1]

17.    By Amendment, effective October 14, 2013, the Termination provision was revised

to read that Section 8.2.2 is amended in its entirety to read:

> If [Harrow Health], its Licensee or their respective Affiliates fails to either initiate any study where data is derived with respect to a Product, or to generate Net Receipts, before the fifth anniversary of the Effective Date, then (unless the parties otherwise mutually agree in writing), the Sellers shall jointly have the right, at their option and as their sole remedy, to terminate the Agreement.

---

[1] Pursuant to the Asset Purchase Agreement, "Assets" is defined as:

> [c]ollectively, (a) the Technology; (b) all discoveries, inventions, technology, compositions, formulations, samples, components, processes, standards, methods, procedures and techniques relating thereto; (c) all formulae, data, information, results of experimentation and testing, and other know-how, whether or not patentable or copyrightable, relating thereto; (d) all product registrations and applications therefor relating thereto; and (e) all intellectual property rights and other assets relating thereto.

"Technology" is defined as:

> [c]ollectively, (a) all compositions having anti-bacterial and anti-inflammatory properties comprising at least one therapeutically effective quantity of an anti-bacterial agent, at least one therapeutically effective quantity of an anti-inflammatory agent, at least one pharmaceutically acceptable excipient and at least one pharmaceutically acceptable carrier; and (b) all methods of manufacture and use of the foregoing.

*Defendant's Breach of Contract and Fraud*

18.     During negotiation of the Asset Purchase Agreement, Mark L. Baum, then Imprimis's and now Harrow Health's, Chief Executive Officer, had conversations with Plaintiffs as to the use of DropLess as an eyedrop, and Mr. Baum assured Plaintiffs that all formulations of DropLess – injectable or topical – would be included in the Asset Purchase Agreement.

19.     Defendant used the assigned invention, *i.e.* DropLess, to produce at least two (2) lines of commercial products: DropLess and LessDrops (the topical equivalent of DropLess).

20.     Defendant produced a product line called "DropLess," an intravitreal, subconjunctival or intradermal injection consistent with the Asset Purchase Agreement.

21.     Defendant also produced a product line called "LessDrops," a topical eye drop, using Plaintiffs' intellectual property consistent with the patent and pre-purchase discussions.

22.     Defendant uses the same manufacturing facilities, rooms, employees and equipment to produce both formulations.

23.     Defendant uses the same intellectual property, *i.e.*, poloxamer, in the same facilities to produce two (2) identical medications as two (2) different product lines, *i.e.*, DropLess and LessDrops.

24.     The only subtle difference between DropLess and LessDrops is small variations in concentrations of poloxamer, depending on the drug combinations in solution, which is the key ingredient in both medications, yet Plaintiffs' intellectual property poloxamer forms the basis for each product and both product lines can be injected or used topically.

25.     Both DropLess and LessDrops are derived from Plaintiffs' invention.

26.     Both DropLess and LessDrops can be used interchangeably.

27.     LessDrops – the product sold for non-injectable, topical use – has been injected by doctors into patients found to be curative and successful in improving medical difficulty.  Upon

information and belief, numerous surgeons have injected LessDrops into eye tissue without consequence and have been assured by Harrow Health that the formulations are identical to DropLess.  Accordingly, LessDrops is acceptable for "intraocular and intravitreal injection[,]" And, therefore, subject to the terms of the Asset Purchase Agreement.

28.     Despite sales of DropLess and LessDrops, Defendant has not made a single payment to Plaintiffs.  Indeed, Plaintiffs have not received the three (3) payments of ████ or any royalty payments related to DropLess or LessDrops, despite the fact that the LessDrops products are identical formulations to the DropLess products.

29.     Instead, Defendant has used the definition of the term "Product" to refuse payment to Plaintiffs.  Specifically, Defendant alleges that because no patents have been issued, Defendant has not created a "Product."  Accordingly, Defendant alleges that because no "Product" exists, Defendant has not generated "Net Receipts" from which to pay royalties to Plaintiffs.

30.     Defendant has not made a diligent effort to obtain a patent required under the Asset Purchase Agreement.  Instead, Defendant has marketed and sold Plaintiffs' invention – DropLess – for profit while also relying upon Plaintiffs' provisional patent application to claim priority to Plaintiffs' invention.  Defendant has also used Plaintiffs' invention to market and sell an identical product – LessDrops – which is chemically similar to Plaintiffs' invention.  Defendant has not paid any royalties on this product despite its similarity to Plaintiffs' invention.

31.     Despite marketing and selling both DropLess and LessDrops, Defendant, in breach of its contractual obligation of diligence, has failed to pay any royalties to Plaintiffs or meet its contractual obligations to Plaintiffs.

*Plaintiffs' Requests for Financial Information*

32.     Defendant has also refused to produce any financial information related to LessDrops, but instead has taken Plaintiffs' intellectual property, created an additional product

*identical* to Plaintiffs' intellectual property, and refused to account for expense allocations or pay royalties for same.

33.     The Asset Purchase Agreement provides Plaintiffs with the right to audit Defendant's financial information to confirm the accuracy of the royalty payments made.

34.     In particular, Section 5.4 of the Asset Purchase Agreement reads:

> Upon the written request of both Sellers and not more than once in each calendar year, [Harrow Health] shall permit an independent certified public accounting firm of nationally recognized standing selected by the Sellers and reasonably acceptable to [Harrow Health], at the Sellers' expense, to have access during normal business hours to such of the financial records of [Harrow Health] as may be reasonably necessary to verify the accuracy of the Net Sales Payment Consideration reports hereunder for the eight (8) calendar quarters immediately prior to the date of such request (other than records for which the Sellers have already conducted an audit under this Section).[2]

35.     Plaintiffs hired an accounting firm to audit Defendant's financial information to determine the accuracy of royalty payments that should have been made.

36.     The accounting firm requested, consistent with generally accepted accounting principles (GAAP), information concerning both DropLess and LessDrops to confirm that the costs attributed to the DropLess product were accurate.

37.     In particular, the accounting firm sought to determine if the costs of the LessDrops product were being attributed to the DropLess product expenses, thereby diminishing the royalty payment due under the Asset Purchase Agreement.

38.     Defendant refused to share specific financial information related to the LessDrops product in order to confirm the accuracy of royalty payments due and owing.

39.     At this preliminary stage and based upon the limited information provided,

---

[2] The Asset Purchase Agreement defines the "Net Sales Payment Consideration" as ███ of Defendant's net receipts from sales of any product developed from the invention.

Plaintiffs' expert has determined that significant royalty fees are due and owing by Defendant.

40.     Defendant has been producing two (2) identical product lines using the same intellectual property, manufacturing facilities, FDA approvals, production rooms, employees and equipment to produce and fill both formulations while charging all costs back to Plaintiffs and reducing royalty payments due (which to date have been zero royalties).

41.     At the same time, Defendant has failed its contractual diligence requirements to obtain necessary patents.

42.     Defendant has exploited Plaintiffs' invention while failing to pay royalties and failing to account for its exploitation of the invention.

*Plaintiffs' Termination of the Agreement and Failure to Return the Technology and Assets*

43.     According to Section 8.2.3 of the Asset Purchase Agreement, as amended, in the event that the agreement is terminated pursuant to Section 8.2.2, Plaintiffs are entitled to the return of the "Technology and the other Assets."

44.     By letter dated March 7, 2019, Defendant's counsel informed Plaintiffs that no "Net Receipts" have been generated.  Attached hereto as *Exhibit "B"* is a true and accurate copy of the letter.

45.     Accordingly, by letter dated May 29, 2019, Plaintiffs provided written notice to Defendant that the Asset Purchase Agreement is terminated pursuant to Section 8.2.2 as the Defendant has failed to generate Net Receipts by the fifth anniversary of the Effective Date of the Amendment to the Asset Purchase Agreement (*i.e.*, October 14, 2018).  Attached hereto as *Exhibit "C"* is a true and accurate copy of the termination notice.

46.     Defendant, however, is in breach of its obligations under Section 8.2.3 of the Asset Purchase Agreement, as amended, because it has refused to return the "Technology and the other Assets" despite the fact that it has admitted a failure to procure Net Receipts within the timeline

required.

47.     Accordingly, Plaintiffs are entitled to re-assignment of the "Technology" and "Assets" (as defined in the Asset Purchase Agreement).  In addition, Plaintiffs are entitled to damages arising out of Defendant's continued use of the "Technology" and "Assets" since the May 29, 2019 termination.  These damages are set forth with specificity in the expert report served by Plaintiffs on or about May 13, 2020, and any future supplements thereto.

<u>**COUNT I (DISMISSED)**</u>

<u>**Declaratory Judgment – 28 U.S.C. 2201 Et Seq.**</u>

48.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

49.     Plaintiffs seek a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. 2201 *et seq.* that Plaintiffs' termination of the Asset Purchase Agreement requires Defendant to re-assign the "Technology and other Assets" as defined in the Asset Purchase Agreement and its Amendment.

50.     The Asset Purchase Agreement and its Amendment permit the Plaintiffs to terminate the agreement upon written notice to Defendant upon failure to generate Net Receipts from the sale of a Product by October 13, 2018.

51.     Upon termination of the Asset Purchase Agreement, Plaintiffs are entitled to re-assignment of the "Technology and other Assets."

52.     Defendant has refused the re-assignment of the "Technology and other Assets" as required by the Asset Purchase Agreement.

53.     Plaintiffs seek a declaratory judgment that the Asset Purchase Agreement is terminated pursuant to its terms and Plaintiffs are entitled to immediate return of "Technology and the other Assets."

**WHEREFORE,** Plaintiffs hereby demand the following relief:

(a)    Declaration that Defendant must immediately re-assign to Plaintiffs the "Technology and other Assets" as defined in the Asset Purchase Agreement;

(b)    Declaration that Defendant is barred from claiming Plaintiffs' provisional patent application as priority date for future patent applications;

(c)    Declaration the Plaintiffs are entitled to use their invention in future patent applications without interference from Defendant;

(d)    Declaration that Defendant is no longer entitled to use Plaintiffs' "Technology and the other Assets" to manufacture and sell products or to obtain patents related thereto;

(e)    Attorneys' fees and costs of suit; and

(f)    Other relief that this court deems just and equitable.

## COUNT II

### Specific Performance

54.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

55.    The Asset Purchase Agreement and its Amendment permit Plaintiffs to terminate the agreement upon written notice to Defendant upon failure to generate Net Receipts from the sale of a Product by October 13, 2018.

56.    Defendant has admitted that it has not generated Net Receipts from the sale of the Product on or before October 13, 2018.

57.    Upon termination of the Asset Purchase Agreement, Plaintiffs are entitled to re-assignment of the "Technology and the other Assets."

58.    Defendant has refused the re-assignment of the "Technology and the other Assets"

11

as required by the Asset Purchase Agreement.

59.     Defendant should be compelled to specifically perform its obligations under the Asset Purchase Agreement and its Amendment and re-assign the "Technology and the other Assets," as defined therein, to Plaintiffs.

**WHEREFORE,** Plaintiffs hereby demand the following relief against Defendant:

(a)     Judgment ordering Defendant to specifically perform the terms of the Asset Purchase Agreement and its Amendment and immediately re-assign to Plaintiffs the "Technology and the other Assets" as defined in the Asset Purchase Agreement;

(b)     Attorneys' fees and costs of suit; and

(c)     Other relief that this court deems just and equitable.

## COUNT III

### Breach of Asset Purchase Agreement - § 8

60.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

61.     Plaintiffs and Defendant entered into and executed the Asset Purchase Agreement, drafted by Defendant, on or about August 8, 2013.

62.     Upon execution, the Asset Purchase Agreement was a valid and binding contract between the parties.

63.     Section 8.2.2 of the Asset Purchase Agreement, as amended, states as follows:

> If [Harrow Health], its Licensee or their respective Affiliates fails to either initiate any study where data is derived with respect to a Product, or to generate Net Receipts, before the fifth anniversary of the Effective Date, then (unless the parties otherwise mutually agree in writing), the Sellers shall jointly have the right, at their option and as their sole remedy, to terminate the Agreement.

64.     Defendant failed to generate any Net Receipts before the fifth anniversary of the

12

Effective Date of the Asset Purchase Agreement.

65.     As a result, by letter dated on May 29, 2019, Plaintiffs terminated the Asset Purchase Agreement as permitted by Section 8.2.2.

66.     Under Section 8.2.3 of the Asset Purchase Agreement: "In the event of the termination of this Agreement in accordance with this Section 8.2, [Harrow Health] shall re-assign to Sellers the Technology and the other Assets."

67.     Section 1.18 of the Asset Purchase Agreement expressly defines the term "Technology" as:

> [c]ollectively, (a) all compositions having anti-bacterial and anti-inflammatory properties comprising at least one therapeutically effective quantity of an anti-bacterial agent, at least one therapeutically effective quantity of an anti-inflammatory agent, at least one pharmaceutically acceptable excipient and at least one pharmaceutically acceptable carrier; and (b) all methods of manufacture and use of the foregoing.

68.     Section 1.2 of the Asset Purchase Agreement expressly defines the term "Asset" as:

> [c]ollectively, (a) the Technology; (b) all discoveries, inventions, technology, compositions, formulations, samples, components, processes, standards, methods, procedures and techniques relating thereto; (c) all formulae, data, information, results of experimentation and testing, and other know-how, whether or not patentable or copyrightable, relating thereto; (d) all product registrations and applications therefor relating thereto; and (e) all intellectual property rights and other assets relating thereto.

69.     After Plaintiffs terminated the Asset Purchase Agreement on May 29, 2019, Defendant refused to re-assign and return the full extent of the "Technology" and "Assets" as those terms are defined in Sections 1.18 and 1.2, respectively.

70.     By failing to re-assign and return the "Technology" and "Assets" as required, Defendant has breached Section 8.2.3 of the Asset Purchase Agreement.

71.     To make matters worse, Defendant continues to use, without authorization, the "Technology" and "Assets" to manufacture compounded ophthalmic drug products; market and sell them to patients, physicians and others in the general public; and generate substantial revenue and profits.

72.     The Asset Purchase Agreement does not permit Defendant to continue using the "Technology" and "Assets" after a termination pursuant to Section 8.2.2 and the mandatory reassignment under Section 8.2.3.

73.     By continuing to use the "Technology" and "Assets" without authorization to manufacture, market, sell and profit from these compounded ophthalmic formulations, Defendant has breached Section 8.2.3 of the Asset Purchase Agreement.

74.     As a result of the breaches of the Asset Purchase Agreement outlined above, Plaintiffs have and continue to suffer damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)     Compensatory, consequential, direct and/or indirect damages as set forth in their May 13, 2020 expert report, and any future supplements thereto;

(b)     Counsel fees and costs of suit; and

(c)     Other relief that this Court deems just and equitable

<u>**COUNT IV (DISMISSED)**</u>

<u>**Declaratory Judgment – 28 U.S.C. 2201 Et Seq.**</u>

75.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

76.     Plaintiffs seek a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. 2201 *et seq.* that the Asset Purchase Agreement requires payment from Defendant to Plaintiffs for the sale of LessDrops.

14

77.     The Asset Purchase Agreement requires Defendant to make payments of ██ of its net receipts of any product the definition of which includes "[a]ny product, in any form or formulation, of an injectable ophthalmological pharmaceutical composition…"

78.     Defendant purchased the injectable version of DropLess from Plaintiffs and then used the same facilities, rooms, employees and equipment to produce and fill a topical formulation known as LessDrops.

79.     The topical formulation is identical to the injectable version and is just another "form or formulation" of the injectable version, yet Defendant refuses to account to Plaintiffs and pay the required ██ of its net receipts related to the topical formulation.

80.     Plaintiffs seek a declaratory judgment that the Asset Purchase Agreement includes Defendant's topical formulation related to poloxamer as "[a]ny product, in any form or formulation, of an injectable ophthalmological pharmaceutical composition…" such that Defendant is required to make payments of ██ of its net receipts for sale of this product.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)     Declaration that Plaintiffs have a legal right to royalty payments under the Asset Purchase Agreement for the topical formulations known as LessDrops created with its same intellectual property;

(b)     Attorneys' fees and costs of suit; and

(c)     Other relief that this court deems just and equitable.

## COUNT V (DISMISSED)

### Breach of Asset Purchase Agreement – § 2

81.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

82.     The Asset Purchase Agreement is a valid and binding agreement between Plaintiffs

and Defendant.

83.     Pursuant to the Asset Purchase Agreement, Plaintiffs agreed to make three (3) payments of ███ each upon certain benchmarks.

84.     Upon information and belief, requisite benchmarks have been met, so the payments are overdue and owing under the Asset Purchase Agreement.

85.     Defendant has refused to make the ███ in payments despite performance and demand from Plaintiffs and has refused provide any information as to each benchmark.

86.     Defendant's failure in this regard constitutes a material breach of the Asset Purchase Agreement.

87.     As a result, Plaintiffs have been and will continue to be damaged.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)     Award of compensatory damages for Defendant's material breach of the Asset Purchase Agreement;

(b)     Attorneys' fees and costs of suit; and

(c)     Other relief that this court deems just and equitable.

## COUNT VI (DISMISSED)

### Breach of Asset Purchase Agreement - § 2

88.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

89.     The Asset Purchase Agreement is a valid and binding agreement between Plaintiffs and Defendant.

90.     Pursuant to the Asset Purchase Agreement, Defendant agreed to pay Plaintiffs a quarterly payment of ███ of Defendant's net receipts from sales of any product developed from the invention.

16

91.     Defendant uses the same intellectual property, manufacturing facilities, FDA approvals, production rooms, employees and equipment to produce a formulation of Plaintiffs' intellectual property and have since sold that product and profited from those sales without compensation to Plaintiffs.

92.     Defendant's failure in this regard constitutes a material breach of the Asset Purchase Agreement.

93.     As a result, Plaintiffs have been and will continue to be damaged.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)     Award of compensatory damages for Defendant's material breach of the Asset Purchase Agreement;

(b)     Attorneys' fees and costs of suit; and

(c)     Other relief that this court deems just and equitable.

## COUNT VII (DISMISSED)

## Declaratory Judgment – 28 U.S.C. 2201 Et Seq.

94.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

95.     Plaintiffs seek a declaratory judgment pursuant to the federal Declaratory Judgment Act, 28 U.S.C. 2201 *et seq.* that the Asset Purchase Agreement requires Defendant to produce financial information related to the product LessDrops.

96.     The Asset Purchase Agreement provides Plaintiffs with the right to audit Defendant's financial information to confirm the accuracy of expense allocations and the royalty payments made.

97.     Plaintiffs hired an accounting firm to audit Defendant's financial information to determine the accuracy of royalty payments made.

98.     The accounting firm requested information consistent with GAAP concerning both DropLess and LessDrops to confirm that the costs attributed to DropLess product were accurate.

99.     In particular, the accounting firm sought to determine if the costs of the LessDrops product were being attributed to the DropLess product, thereby diminishing the royalty payment due under the Asset Purchase Agreement.

100.    Defendant refused to share specific financial information related to the LessDrops product in order to confirm the accuracy of royalty payments previously made.

101.    Defendant has been producing two (2) identical product lines using the same intellectual property, manufacturing facilities, FDA approvals, production rooms, employees and equipment to produce and fill both formulations while charging the costs back to Plaintiffs and reducing royalty payments due and owing.

102.    Yet, Defendant has refused to produce required financial information necessary to support royalty payments due to Plaintiffs.

103.    Plaintiffs seek a declaratory judgment that the Asset Purchase Agreement requires Defendants to provide financial information related to both the DropLess and LessDrops products to confirm whether or not improper production costs are being attributed to Plaintiffs.

**WHEREFORE,** Plaintiffs hereby demand the following relief against Defendant:

(a)     Declaration compelling Defendant to provide full financial information related to the topical formulation known as LessDrops as required under the Asset Purchase Agreement;

(b)     Declaration compelling Defendant to provide full financial information related to the injectable formulation known as DropLess as required under the Asset Purchase Agreement;

(c)     Attorneys' fees and costs of suit; and

18

(d)     Other relief that this court deems just and equitable.

## COUNT VIII (DISMISSED)

### Breach of the Asset Purchase Agreement - § 5

104.     Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

105.     The Asset Purchase Agreement is a valid and binding agreement between Plaintiffs and Defendant.

106.     Defendant has been producing two (2) identical products using the same facilities, rooms, employees and equipment to produce and fill both formulations while charging the costs back to Plaintiffs and reducing royalty payments due and owing.

107.     Plaintiffs hired an accounting firm to audit Defendant's financial information to determine the accuracy of royalty payments made.

108.     The accounting firm requested information concerning both DropLess and LessDrops to confirm that the costs attributed to DropLess product were accurate.

109.     In particular, the accounting firm sought to determine if the costs of the LessDrops product were being attributed to the DropLess product, thereby diminishing the royalty payment due under the Asset Purchase Agreement.

110.     Defendant refused to share specific financial information related to the LessDrops product necessary to confirm the accuracy of royalty payments previously made.

111.     Defendant's failure in this regard constitutes a material breach of the Asset Purchase Agreement.

112.     As a result, Plaintiffs have been and will continue to be damaged.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)     Award of compensatory damages for Defendant's material breach of the

Asset Purchase Agreement;

> (b)    Attorneys' fees and costs of suit; and

> (c)    Other relief that this court deems just and equitable.

## COUNT IX (DISMISSED)

## Breach of the Asset Purchase Agreement - § 6

113.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein.

114.    The Asset Purchase Agreements requires Defendant to use "commercially reasonable efforts" to develop and commercialize a Product in major markets.

115.    The Asset Purchase Agreement also required Defendant, at its own expense, to prepare, file, prosecute and enforce patent applications necessary to commercialize a Product in a major market.

116.    Defendant has failed to accomplish either requirement of the Asset Purchase Agreement.

117.    Defendant has not made a diligent effort to obtain a patent, as required under the Asset Purchase Agreement.

118.    Instead Defendant has marketed and sold Plaintiffs' invention – DropLess – for profit while also relying upon Plaintiffs' provisional patent application to claim priority to Plaintiffs' invention.

119.    Defendant has also used Defendant's invention to market and sell an identical product – LessDrops – which is chemically similar to Plaintiffs' invention.  Defendant has not paid any royalties on this product despite its similarity to Plaintiffs' invention.

120.    Despite marketing and selling both DropLess and LessDrops, Defendant, in breach of its contractual obligation of diligence, has failed to pay any royalties to Plaintiffs or meet their

contractual obligations to Plaintiffs.

121.    Defendant has not fulfilled its obligations of diligence required in the Asset Purchase Agreement, but has instead used the term "Product" to avoid obtaining and patent and paying royalties, while at the same time exploiting Plaintiffs' invention.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)    Award of compensatory damages for Defendant's material breach of the Asset Purchase Agreement;

(b)    Attorneys' fees and costs of suit; and

(c)    Other relief that this court deems just and equitable.

## COUNT X (DISMISSED)

### Fraud in the Inducement

122.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if set forth fully herein

123.    In order to induce Plaintiffs into the Asset Purchase Agreement, Defendant, through its Chief Executive Officer, intentionally made material misrepresentations to Plaintiffs, *i.e.*, that all formulations of DropLess, including a formulation for use as an eyedrop would be subject to the Asset Purchase Agreement.

124.    These material misrepresentations were intentionally made by Defendant with the intent that Plaintiffs would rely upon same in executing the Asset Purchase Agreement. Plaintiffs reasonably relied upon these material misrepresentations.

125.    All of these representations made by Defendant were intentionally false at the time they were made.

126.    Following entering in the Asset Purchase Agreement, Defendant produced a formulation of DropLess for use an eyedrop, but has refused to make contractual royalty payments

21

or providing financial information related to royalty payments due from production of this identical product.

127.    As a result, Plaintiffs have and will continue to be damaged.

**WHEREFORE**, Plaintiffs hereby demand the following relief against Defendant:

(a)    Award of compensatory damages for Defendant's fraudulent inducement

(b)    Attorneys' fees and costs of suit; and

(c)    Other relief that this court deems just and equitable.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  June 11, 2020
Redacted Version: June 18, 2020

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Beth A. Swadley (No. 6331)
Nicholas D. Picollelli, Jr. (No. 6317)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
bswadley@ycst.com
npicollelli@ycst.com

BRACH EICHLER LLC
Charles X. Gormally, Esq. (*admitted pro hac vice*)
Thomas Kamvosoulis, Esq. (*admitted pro hac vice*)
Paul M. Bishop, Esq. (*admitted pro hac vice*)
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 403-3138
cgormally@bracheichler.com
tkamvosoulis@bracheichler.com
pbishop@bracheichler.com

*Attorneys for Plaintiffs and Counterclaim
Defendants*

23

## <u>CERTIFICATE OF SERVICE</u>

I, Pilar G. Kraman, hereby certify that on June 18, 2020, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

> James M. Lennon, Esquire
> James Gorman III, Esquire
> Neil A. Benchell, Esquire
> Devlin Law Firm LLC
> 1526 Gilpin Avenue
> Wilmington, DE 19806
> *jlennon@devlinlawfirm.com*
> *jgorman@devlinlawfirm.com*
> *nbenchell@devlinlawfirm.com*
>
> *Attorneys for Defendant*

I further certify that on June 18, 2020, I caused a copy of the foregoing document to be

served by e-mail on the above-listed counsel.

Dated:   June 18, 2020

> YOUNG CONAWAY STARGATT &
>  TAYLOR, LLP
>
> */s/ Pilar G. Kraman*
> Pilar G. Kraman (No. 5199)
> Beth A. Swadley (No. 6331)
> Rodney Square
> 1000 N. King Street
> Wilmington, Delaware 19801
> (302) 571-6600
> *pkraman@ycst.com*
> *bswadley@ycst.com*
>
> *Attorney for Plaintiffs*